87 F.3d 1318
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ernest CRAWFORD, Plaintiff-Appellant,
v.
SEIBU HAWAII, Defendant-Appellee.
 No. 94-15924.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 1996.
Decided June 12, 1996.
 
 Before: FLETCHER, D.W. NELSON and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ernest Crawford appeals the district court's judgment, following a bench trial, in favor of Seibu Hawaii in his action alleging employment discrimination on the basis of his race and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This Court has jurisdiction under 28 U.S.C. § 1291, and we affirm the judgment of the district court.
 
 I.
 
 3
 We need not set forth all of the facts relevant to Crawford's claims because the parties are familiar with them. Crawford argues that the district court committed reversible error by relying on Exhibit 55, which was not admitted into evidence, to find that Randall Duffy's assessment of disciplinary "red entries" for Crawford's missed time-clock punches was not disparate treatment based on his race.
 
 
 4
 The trial court's reliance on inadmissible evidence "will not ordinarily be a ground of reversal if there was competent evidence received sufficient to support the findings." Plummer v. Western Int'l Hotels Co., 656 F.2d 502, 505 (9th Cir.1981) (quoting E. Cleary, McCormick on Evidence § 60, at 137 (2d.ed.1979) (footnote omitted)). Even if the district court improperly relied upon Exhibit 55 as evidence of the varying time clock punch requirements for different shifts, other evidence in the record supports the court's finding that persons on Crawford's shift (the "first watch") were required to punch the time clock more frequently than persons on other shifts.
 
 
 5
 Testimony at trial supported the district court's finding that security guards on the first watch were required to punch the time clock every hour to help them remain alert and awake, while guards on the other shifts did not have to punch the clock as frequently. Other testimonial and documentary evidence supported a finding that the clock punching requirements for the third shift changed some time in early April 1989, and that Lester Doong's missed time punch on April 9, 1989 was excused pursuant to a grace period for the implementation of new policies. Contrary to Crawford's contention, Doong's security log for May 22, 1989 contains a notation, similar to the ones denoting missed time punches in other logs, indicating that he received a red entry for his missed punch.
 
 
 6
 Because competent evidence on the record supports the district court's findings regarding the different clock punching requirements for each shift, the court did not clearly err in finding that Crawford's receipt of red entries for failure to punch the time clock hourly was not evidence of disparate treatment. See Pullman-Standard v. Swint, 456 U.S. 273, 287-89 (1982) (district court's findings as to actual discriminatory intent are reviewed for clear error).
 
 II.
 
 7
 Crawford argues that the district court violated the best evidence rule by admitting into evidence photocopies of the logs containing the red entries and photocopies of handwritten meeting notes. We review the district court's evidentiary rulings for an abuse of discretion. United States v. Manning, 56 F.3d 1188, 1196 (9th Cir.1995).
 
 
 8
 Photocopies are admissible to the same extent as an original unless "a genuine question is raised as to the authenticity of the original" or "in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed.R.Evid. 1003. Crawford does not allege that the photocopies of the logs were altered or otherwise fraudulent. He instead argues that the district court's admission of photocopies of the logs into evidence, rather than requiring Seibu to produce the originals, was an abuse of discretion because only the originals contained writing in red ink.
 
 
 9
 Crawford did not object to the logs or raise the issue of the ink color when Seibu entered them into evidence at trial. Even assuming that Crawford had properly objected to admission of the logs, there is no evidence that he was prejudiced by the admission of the photocopies. See United States v. Skillman, 922 F.2d 1370, 1375 (9th Cir.1990) (assuming, arguendo, that a photocopy erroneously was admitted, the error would not be grounds for reversal where appellant did not establish that admission was prejudicial), cert. dismissed, 502 U.S. 922 (1991). Throughout the trial witnesses testified without confusion about the red entries in the logs.[1] Any error in admitting the photocopies instead of the originals would have been harmless error.
 
 
 10
 We also conclude that the district court's admission into evidence of photocopies of handwritten notes of Crawford's April 27, 1989 meeting with Yoshio Goto, even if erroneous, was harmless error. Skillman, 922 F.2d at 1375. Both Goto and Crawford agreed that the meeting occurred, and that they discussed Crawford's employment concerns and red marks at the meeting. There was substantial evidence that Crawford's work record, rather than the content of the allegedly altered notes, was the determinative factor in the decision to terminate Crawford. Because the trial court more probably than not would have reached the same conclusions if the original notes had been admitted instead of the photocopies, we conclude that any error in their admission was harmless. See Cooper v. Firestone Tire and Rubber Co., 945 F.2d 1103, 1106 (9th Cir.1991).
 
 III.
 
 11
 Crawford argues that the district court erred in finding that Seibu's proffered reason for terminating him was not a pretext for race discrimination. We review this claim under a clearly erroneous standard. St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2756 (1993).
 
 
 12
 The district court found that Crawford established his prima facie case by offering evidence that Duffy made derogatory comments about African-Americans on two occasions and strictly applied the disciplinary system to Crawford's work. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) ("The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination"). The court concluded, however, that Crawford's repeated failure to follow security department rules constituted a legitimate nondiscriminatory reason for his termination.
 
 
 13
 Substantial evidence in the record demonstrated that Duffy was scrupulous, if not overzealous, about enforcing the detailed security requirements against the guards. The log reports show that Duffy also gave red entries to other guards for seemingly minor infractions. Evidence in the record also supported a finding that Duffy's poor working relationship with Crawford stemmed from Crawford's belief that he could perform the job of security director better than Duffy. Crawford complained to Goto that Duffy was trying to eliminate persons in the security department who were more qualified to be the security director than Duffy was. Id.
 
 
 14
 We conclude that the district court did not clearly err in finding that Seibu's termination of Crawford for failure to follow security department rules was not a pretext for race discrimination. See St. Mary's Honor Center, 113 S.Ct. at 2747.
 
 IV.
 
 15
 Crawford argues that the district court erred in finding that his termination was not a retaliatory discharge in violation of 42 U.S.C. § 2000e-3(a). Evidence in the record supports the district court's conclusion that Crawford's termination was not motivated by retaliation for his filing of an EEOC complaint on May 27, 1989.[2] All of the events at issue occurred significantly in advance of Crawford's filing the complaint. Goto testified that he made the decision to terminate Crawford after a meeting with Duffy, which occurred a few days after Goto's April 27 meeting with Crawford. Both Goto and James Judge, Esq. (Seibu's counsel) testified that the scheduled meeting of June 5, 1989, which was cancelled after Seibu became aware of Crawford's EEOC complaint, was a meeting to inform Crawford of the decision to terminate his employment.
 
 
 16
 We give considerable deference to the district court's evaluation of Goto's and Judge's credibility. See Anderson v. Bessemer City, 470 U.S. 564, 575 (1985). We conclude that the district court did not clearly err in determining that Crawford's termination was not motivated by retaliation.
 
 
 17
 Crawford also argues that the cancellation of the June 5, 1989 meeting was an adverse action in retaliation for filing an EEOC complaint. Judge testified that the meeting was cancelled to avoid the appearance of retaliatory discharge, and that he advised Goto to postpone terminating Crawford until the EEOC investigation was complete. We agree with the district court's conclusion that postponement of Crawford's termination pending resolution of the EEOC complaint was not retaliation actionable under 42 U.S.C. § 2000e-3(a).
 
 V.
 
 18
 We conclude that the district court's reliance on Exhibit 55 and admission of photocopies into evidence, if erroneous, constituted harmless error. We also conclude that the district court did not clearly err in finding that application of the disciplinary system to Crawford was not disparate treatment based on race, that Crawford failed to prove that Seibu's proffered reason for his termination was a pretext for discrimination, or that any adverse actions by Seibu were retaliatory.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The portion of the transcript containing the instance of witness confusion Crawford cited, demonstrates that the witness in fact was able to determine whether he had received a red entry from words written on the log and the location of the written comments
 
 
 [2]
 Although Crawford contends that the retaliation started in 1988, when he informed Seibu of his intent to file an EEOC charge, there is no evidence in the record on appeal that Crawford gave Seibu such notification. Crawford's letter to Goto, dated August 17, 1988, generally complains about Duffy's "continuous practice of seguration [sic] and discrimination on the basis of race and denial of equal opportunity." There was evidence that Seibu took steps to attempt to remedy the tension between Duffy and Crawford, rather taking adverse action against Crawford, after receiving this letter